The STATE of Ohio, Appellant,

v.

BERRY, Appellee.

[Cite as *State v. Berry* (1995), 104 Ohio App.3d 301.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67108.

Decided March 16, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *John Smerillo,* Assistant Prosecuting Attorney, for appellant.

*Richard Agopian,* for appellee.

*Per Curiam.*

Appellant, the state of Ohio, appeals the suppression motion granted in favor of appellee William Berry. For the reasons that follow, we affirm.

Appellee was sitting on a porch. Detective Thomas observed him walk to a car and hold a brief conversation with the occupant of the car. The car then drove off. The officer did not observe him do anything else. The officer then came up to appellee and patted him down. He put his hand into appellee's pocket and removed crack cocaine and then placed him under arrest.

In *State v. Rucker* (1990), 63 Ohio App.3d 762, 580 N.E.2d 59, this court held that a stop and search is unconstitutional where the officer did not observe the defendant commit any crime and did not believe him to be dangerous. We observed that "the record contains no evidence which would support an independent finding that the officer believed the appellee to be armed and dangerous. Rather, the record reveals that after an unconstitutional stop of the appellee, a police officer simply reached into appellee's jacket pocket and pulled out a bag which happened to contain cocaine. It is quite clear that neither of the *Terry* requirements was present in the stop and frisk of defendant-appellee." *Id.* at 764, 580 N.E.2d at 60.

Under the totality of the circumstances, the investigative stop of William Berry in the instant case was not justified. *State v. Walker* (1993), 90 Ohio App.3d 132, 628 N.E.2d 91; see, also, *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832. See, also, *State v. Linson* (1988), 51 Ohio App.3d 49, 554 N.E.2d 146 (this

court affirmed a motion to suppress where the reason for the stop and search was that the suspect was in the so-called area of high drug activities and the suspect had previously been arrested, including of course the police officer's years of experience in drug related arrests). Such a weak excuse to justify a search just will not do.

In *Broadview Hts. v. Abkemeier* (1992), 83 Ohio App.3d 633, 636, 615 N.E.2d 656, 657, this court noted:

"The trier of fact is in an unique position to observe a witness face-to-face. Nonverbal behavior accounts for sixty percent of the total meaning of a transmitted message; another thirty percent of the meaning is gleaned from voice inflection. Only ten percent of the total message results from a witness' choice of words. Rasicot, New Techniques for Winning Jury Trials (1990) 10. A witness' information is, therefore, amazingly judged by focusing primarily on nonverbal communication."

The trial court, as the trier of fact, had the discretion to believe or not believe the police officer's version of the events. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. In the instant case, the trial judge chose not to believe the officer's testimony. We fail to find an abuse of discretion here.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and HARPER, J., concur.

MATIA, J., dissents.

MATIA, Judge, dissenting.

I respectfully dissent from the majority's judgment in this appeal. While the facts of this case are not in dispute, I believe a more detailed analysis supports the conclusion that Detective Thomas did in fact have a reasonable suspicion that criminal activity had occurred or was imminent.

On the night of November 3, 1993, William Berry, defendant-appellee, was placed under surveillance by Detective Charles E. Thomas of the Cleveland Police Department. Detective Thomas, an officer with seventeen years' experience, observed appellee for approximately five to ten minutes on the porch of a boarded-up "drug house" on East 95th Street in Cleveland, Ohio. The officers knew William Berry, as they had "caught him before" and knew that he lived four houses up the street from the boarded up "drug house."

The house is one in a block of three boarded-up houses which maintains a reputation of drug-selling activity. In fact, Detective Thomas had made several arrests in the same area for the trafficking of drugs. Additionally, prior to this

incident, numerous councilmanic complaints had been lodged with the police department concerning drug activity from that specific address.

Knowing drug dealers would flee when they saw a police car, Detective Thomas approached appellee from behind the house. It was a cold night and Detective Thomas witnessed appellee sitting alone on the dark porch, waiting. An automobile pulled to the front of the house. Detective Thomas watched appellee walk over to the car, go to its side, engage in a conversation and walk back to the porch as the car pulled away.

Based upon the events, Detective Thomas identified himself, approached appellee and asked him what he was doing there. Detective Thomas could not recall appellee's answer. Detective Thomas conducted a pat-down search. During the search, Detective Thomas felt what he believed to be crack cocaine in appellee's front coat pocket. The detective went into appellee's pocket and retrieved a plastic bag with seven rocks of crack cocaine. Appellee was subsequently arrested and charged with trafficking in drugs pursuant to R.C. 2925.03 and drug abuse pursuant to R.C. 2925.11.

In a suppression hearing, the state bears the burden of proof and must demonstrate that the warrantless search and seizure were reasonable. *State v. Bevan* (1992), 80 Ohio App.3d 126, 608 N.E.2d 1099. In justifying a particular intrusion, a police officer must be able to point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant the officer's belief that criminal activity has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

It should be noted that the level of suspicion required for a *Terry* stop is *less* demanding than that required to establish probable cause. *United States v. Montoya de Hernandez* (1985), 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381. Probable cause has been defined as "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. The United States Supreme Court has held that since an effort to define "reasonable and/or articulable suspicion" creates unnecessary difficulty, when evaluating the validity of a stop such as this, a court must consider "the totality of the circumstances—the whole picture." *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628.

"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior * * *. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

*Illinois v. Gates*, 462 U.S. at 231–232, 103 S.Ct. at 2328–2329, 76 L.Ed.2d at 543–544.

Thus, when considering whether there existed a reasonable suspicion for an investigatory stop, a trial court must look at the totality of the circumstances, as viewed in the eyes of one versed in the field of law enforcement, and determine whether there is at least a fair probability that criminal activity occurred or was imminent.

In ruling upon the motion to suppress, a review of the transcript indicates that the trial court placed great weight upon this court's holding in *State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329. In that case we held that when a defendant merely approaches an occupied car on foot in a high crime area followed by a retreat from the scene upon seeing police, it is not sufficient activity to justify an investigatory stop of the defendant. Similarly, the majority places great weight on the fact that the officer did not actually observe defendant commit any crime.

However, I believe that the facts as stated above distinguish this case from *Fincher* and its progeny. Again, the boarded-up drug house had a reputation for high drug activity. The officers knew appellee, for they had "caught him before." The officers knew appellee lived approximately four houses up the street. It was a cold night and appellee was sitting alone, in the dark, on the porch of the boarded-up "drug house." An automobile approached, stopped in front, and appellee approached the side of the car and engaged in a conversation. The car drove off and appellee returned to the porch.

All of these factors, as well as the detective's seventeen years' experience, are relevant in determining "reasonable suspicion." See *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *State v. Duganitz* (May 5, 1994), Cuyahoga App. No. 65328, unreported, 1994 WL 173521. Although the detective testified that he did not actually see a transaction and/or exchange, I cannot help but recognize that the actions of appellee, under these circumstances, are often made by those engaged in drug transactions. Detective Thomas testified to this fact.

The majority's opinion has the effect of taking away the use of a law enforcement officer's unique intuition developed through, in this case, seventeen years of service in the department. Under the totality of circumstances as viewed by an officer with considerable experience, there was a reasonable suspicion that criminal activity had taken place. Therefore, I believe the detective reasonably stopped appellee for investigative purposes.

Next, when examining the search and subsequent seizure of the crack cocaine, the United States Supreme Court recognized in *Terry* that a police officer may make a limited search in order to protect himself and the public:

" * * * [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907.

In this case the detective approached an individual suspected of selling drugs on the porch of a boarded-up "drug house." Another factor to be considered is that the incident occurred in the evening. Under these circumstances and in light of today's high association between drug transactions and the use of firearms, Detective Thomas was justified in believing that the appellee may have been armed. As such, we should hold the search of appellee was appropriate.

The purpose of such a search is not evidentiary in nature, but rather protective. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Sibron v. New York* (1968), 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936.

However, the United States Supreme Court recently recognized a "plain feel" or "plain touch" exception to the seizure of nonthreatening contraband. In *Minnesota v. Dickerson* (1993), 508 U.S. 366, 376, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 345, the court stated:

"If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context."

In the case *sub judice*, Detective Thomas testified not only that he had made hundreds and maybe thousands of drug arrests in the course of his seventeen years on the police force, but that during the pat-down search he "felt what [he] believed was crack cocaine in his right front coat pocket." It was after this determination that Detective Thomas further went into the right front coat pocket and found a plastic bag with seven rocks of crack cocaine. At that time, appellee was read his rights and arrested.

Based upon the *unrebutted* testimony, Detective Thomas immediately believed that what he felt in appellee's pocket was crack cocaine. He did not continue

exploration of the pocket to make this determination. As such, the "incriminating character" of the contraband was immediately apparent to the detective. See *State v. Crawford* (Sept. 23, 1993), Cuyahoga App. No. 64607, unreported, 1993 WL 384506. Detective Thomas had a lawful right of access to the object and was justified in seizing the contraband at issue.

For the foregoing reasons Detective Thomas had a reasonable suspicion that criminal activity had taken place or was imminent. As such, the stop of defendant was appropriate. Furthermore, during a protective pat-down search, the detective felt "what he believed to be crack cocaine." Thus, he had reached the prerequisite level of probable cause to seize the contraband under *Dickerson, supra.* The trial court's suppression of the evidence was in error. Accordingly, I would reverse the decision of the trial court.