DECISION AND JUDGMENT ENTRY
This is an appeal from the Chillicothe Municipal Court, which granted appellee Byron Yeager's motion to suppress evidence obtained during an investigative detention. The state assigns a single error for our review:
 The trial Court acted to the manifest prejudice of the Plaintiff-Appellant by sustaining a motion to suppress filed by the Defendant-Appellee because the evidence adduced on such motion confirmed that the officer had reasonable articulable suspicion to make the stop and inquiry in this case.
The main issue we must decide is whether an officer's investigative stop of an automobile is justified solely on the basis of information that the vehicle's owner does not possess a valid driver's license. In this case, we hold that this fact and the rational inferences drawn from it formed the reasonable suspicion necessary to justify the traffic stop leading to Mr. Yeager's arrest. Accordingly, we sustain the state's assignment of error, reverse the trial court's decision, and remand the case for further proceedings.
 I.
One night in January 1999, at approximately 8:30 p.m., Chillicothe police sergeant Roger Moore was patrolling an area of Chillicothe known to have high drug trafficking activity. He observed a westbound car stop and pick up a woman standing near the corner. Sgt. Moore recognized the woman getting into the car as a known crack abuser and dealer. Sgt. Moore followed the car and radioed the police dispatcher for information about its owner. Sgt. Moore did not see the driver of the car.
The police dispatcher informed Sgt. Moore that the car was registered to one Evelyn Bosstic,[1] who did not have a valid driver's license. Sgt. Moore obtained no information regarding the owner other than the name and license status. After obtaining this information, Sgt. Moore activated the lights on his police cruiser and initiated a traffic stop. During the period of time in which he followed the vehicle, Sgt. Moore observed no traffic violations and did not determine whether the driver was a male or female.
As Sgt. Moore approached the vehicle, he saw the driver appear to consume something from a bottle. When he got to the driver side window, Sgt. Moore noticed for the first time that the driver (Mr. Yeager) was male. Sgt. Moore discovered a bottle of mouthwash between the driver and passenger seats and detected a strong odor of alcohol. Sgt. Moore ultimately arrested Mr. Yeager for operating a motor vehicle while under the influence of alcohol ("CMVI"), in violation of R.C. 4511.19(A)(1).
Mr. Yeager pled not guilty to the OMVI charge and filed a motion to suppress all evidence obtained from the traffic stop. The motion alleged that Sgt. Moore lacked reasonable suspicion to stop the car Mr. Yeager was driving.[2] The Chillicothe Municipal Court agreed with Mr. Yeager and sustained the motion. The court rejected the notion that Sgt. Moore could make the traffic stop simply because the car's owner did not have a valid driver's license. Because Sgt. Moore had no information other than the owner's name, the court concluded that he "had no reason to justify his belief that the owner was the driver of the vehicle." The court also rejected the argument that Mr. Yeager's act of picking up a known drug abuser in an area of high drug activity gave rise to reasonable suspicion to justify a traffic stop in this case. Following the court's ruling, the state filed a timely notice of appeal pursuant to Crim.R. 12 (J).
 II.
The state's lone assignment of error argues that the municipal court should have overruled Mr. Yeager's motion to suppress. The state contends that Sgt. Moore possessed reasonable suspicion to stop the car Mr. Yeager was driving based on reliable information that the car's owner did not have a valid driver's license. The state acknowledges that Sgt. Moore did not have any information on the car's owner other than a name and did not match any physical description of Mr. Yeager to that of the owner. Nevertheless, the state argues that the traffic stop was justified based on the license check and "the additional activity and circumstances of drug zone activity with a known drug dealer and [Mr. Yeager] drinking out of a bottle." We agree with the state that the trial court erred, although not for all of the reasons the state posits on this appeal.
When considering an appeal from a trial court's decision on a motion to suppress evidence, we are presented with a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328,332. In a hearing on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses.State v. Brooks (1996), 75 Ohio St.3d 148, 154; State v. Mills (1992), 62 Ohio St.3d 357, 366. As a reviewing court, we must defer to the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Medcalf
(1996), 111 Ohio App.3d 142, 145; State v. Guysinger (1993),86 Ohio App.3d 592, 594. We must then independently determine, as a matter of law, whether those facts satisfy the appropriate legal standard involved in the case. Long, 127 Ohio App.3d at 332;State v. Venham (1994), 96 Ohio App.3d 649, 653; State v. Klein
(1991), 73 Ohio App.3d 486, 488.
Mr. Yeager's motion to suppress argued that Sgt. Moore's traffic stop violated his rights under the Fourth andFourteenth Amendments to the United States Constitution. TheFourth Amendment, as applied to the state by the Fourteenth Amendment, protects individuals from unreasonable searches and seizures.Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391,1400, 59 L.Ed.2d 662. Although the text of the Fourth Amendment requires a warrant based upon probable cause, there exist specifically established exceptions to the warrant requirement. See State v. Sneed (1992), 63 Ohio St.3d 3, 6-7, citing Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514,19 L.Ed.2d 576, 585. One of these, the investigative stop exception, allows a police officer to stop an individual if the officer has an objectively reasonable suspicion that criminal behavior has occurred or is imminent. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews (1991),57 Ohio St.3d 86, 87. In the automobile context, a police officer may effectuate a traffic stop when "there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law * * *." Prouse, supra, 440 U.S. at 663,99 S.Ct. at 1401; see, also, State v. Chatton (1984), 11 Ohio St.3d 59,61. For this "articulable and reasonable suspicion" to exist, an officer must be able to point to specific facts that, when taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that the detainee has committed or is committing a crime. Terry,392 U.S. at 21-22; State v. Freeman (1980), 64 Ohio St.2d 291, 294. The propriety of the investigative stop must also be viewed in light of the totality of the surrounding circumstances. State v.Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; Freeman, supra, at paragraph one of the syllabus.
In sustaining the motion to suppress, the trial court relied principally on Dayton v. Erickson (Mar. 20, 1995), Montgomery App. No. 14712, unreported.[3] In Erickson, the Second District Court of Appeals held that a police officer lacked reasonable suspicion to effectuate a traffic stop when he learned that an automobile owner had a suspended driver's license. The Second District acknowledged its earlier decisions upholding traffic stops based on this type of information. In those cases, however, the court noted that "the police officer also had some additional basis to suspect that the owner was the driver." Id.
For example, when the officer could ascertain similarity between the description of the owner and driver, the officer had reasonable articulable suspicion to stop a vehicle. Id., citingState v. Owens (1991), 75 Ohio App.3d 523, State v. Shelton (July 29, 1994), Montgomery App. No. 14284, unreported, and State v.Stamper (Feb. 10, 1993), Montgomery App. No. 13469, unreported. The Erickson court also noted an investigative stop to be proper when the police officer could at least match the gender of the owner with the gender of the driver. Id., (citing State v. Adams
(Sept. 15, 1989), Montgomery App. No. 11608, unreported. However, absent any indication that the unlicensed owner was also driving the car at the time of the stop, the Erickson court held that the officer did not have a reasonable and articulable suspicion that the driver was engaged in criminal activity. Id.
The state attempts to distinguish Erickson by arguing that Sgt. Moore relied on more than simply the information that the vehicle's owner was an unlicensed driver. The state correctly characterizes Erickson's holding as frowning upon a traffic stop based solely on a computer check showing the vehicle owner to be unlicensed. In this case, however, the state argues that Sgt. Moore "had the additional activity and circumstances of drug zone activity with a known drug dealer * * *." We find this attempted distinction of Erickson's rationale to be unavailing.
The state's argument misunderstands the Erickson rationale relied upon by the trial court. The Erickson court held the traffic stop in that case invalid because the police officer had no facts to support a reasonable suspicion that a vehicle owner with a suspended license was also the driver. Thus, Erickson
required some additional basis, apart from the vehicle owner's license status, to suspect that the owner was the driver. The additional bases identified by the Erickson court (e.g., matching physical description of driver and owner or identical gender of driver and owner) are aimed at ascertaining whether the identity
of the owner is the same as that of the driver. Conversely, the "additional activity and circumstances" argued by the state in this case do not help to raise a reasonable suspicion that Mr. Yeager was the same person as the vehicle owner because they are simply irrelevant to any determination of identity. Neither the fact that Mr. Yeager's passenger was a known crack dealer and abuser nor the fact that Mr. Yeager was driving in a high drug crime area provides any additional basis for suspecting that Mr. Yeager was driving without a license. Accordingly, we reject the state's argument that Sgt. Moore had "additional activity and circumstances" apart from the vehicle owner's license status that justified the traffic stop.
In its appellate brief, the state also emphasizes the fact that Sgt. Moore observed Mr. Yeager drinking from a bottle. However, the testimony at the suppression hearing indicates that Sgt. Moore observed this action by Mr. Yeager only after he had effectuated the traffic stop. Thus, this observation could not have been a fact upon which Sgt. Moore decided to stop the vehicle. See State v. Simmons (Aug. 3, 1990), Washington App. No. 89CA18, unreported (reasonable suspicion cannot be based on facts obtained after the initial stop). Further, we note that the trial court's findings of fact did not list this observation as a justification for the stop, ostensibly because Sgt. Moore did not articulate it as a reason for his decision to stop the vehicle.
Although Sgt. Moore purportedly stopped Mr. Yeager simply because of the suspicion that he was driving without a license, the testimony from the suppression hearing suggests that he may have suspected illegal drug activity and sought to investigate that possibility. We note that the totality of the circumstances in this case do not justify an investigatory stop for this purpose. Sgt. Moore offered only two facts that could possibly relate to drug activity, i.e. the high drug crime area of town and Mr. Yeager's passenger being a known drug dealer and user. Sgt. Moore offered nothing else to indicate that a drug transaction or drug abuse was afoot at the time he stopped the vehicle. Given the innocent nature of these factors, Sgt. Moore had, at best, an inarticulate hunch about drug activity and not a reasonable suspicion based upon his observations. See State v.Klein, supra, 73 Ohio App.3d at 489; cf. State v. Berry (1995),104 Ohio App.3d 301, 302-03 (fact of defendant walking to parked car for short conversation, after which car drove off, did not support investigative detention).
Having disposed of the state's main argument, we must address whether the information about the vehicle owner's invalid license, standing alone, created the requisite reasonable suspicion necessary to justify the traffic stop. Applying the Second District's reasoning in Erickson, the trial court decided it did not. We disagree with the trial court and hold that reliable information that a vehicle's owner lacks a valid operator's license, coupled with the rational inference that the owner is likely to be the driver, may create reasonable suspicion of criminal activity to support a traffic stop. We decline to follow the Second District's holding in Erickson and instead choose to affirm two of our own cases dealing with this issue.
In State v. Stroop (Aug. 10, 1993), Highland App. No. 92CA824, unreported, we decided the same issue raised by Mr. Yeager's motion to suppress. In Stroop, a deputy sheriff stopped the defendant's vehicle after a license check revealed that the vehicle owner's license was suspended. The traffic stop revealed that the defendant was, in fact, the vehicle's owner and was driving with a suspended license. Like Mr. Yeager in this case, the defendant in Stroop filed a motion to suppress, arguing that the deputy lacked reasonable suspicion to stop her. The defendant argued that the fact of the vehicle owner's license suspension provided no basis to conclude that the driver of the car was engaged in unlawful activity. We affirmed the denial of the defendant's motion to suppress, noting that an officer may reasonably infer that a vehicle's owner is also likely to be its driver. Id., citing State v. Owens, supra,75 Ohio App.3d at 525. Therefore, we concluded that "the facts known to the officer, i.e. that the owner of the vehicle had a suspended operator's license, considered with the rational inference that the owner of the vehicle is likely to be operating the vehicle[,] constitutes sufficient reasonable suspicion to justify the stop."Id.; accord Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608. Accordingly, we held that the deputy's failure to match any description of the owner with that of the driver was of no consequence. Stroop, supra. Because the officer had information that the vehicle owner's license was suspended, he had reasonable suspicion to stop the vehicle, even without any independent identification of the driver. See Id., citing State v. Powell
(Feb. 24, 1993), Ashland App. No. CA-1021, unreported, and Statev. Willis (Nov. 10, 1992), Miami App. No. 91CA33, unreported.
In a later case, a majority of this court adhered toStroop's rationale in upholding the constitutionality of a traffic stop based on information that the vehicle owner had an invalid driver's license. See State v. Cunningham (May 2, 1995), Ross App. No. 94CA2023, unreported. In Cunningham, an Ohio State Highway Patrol trooper learned from his dispatcher that the owner of a van he had observed had a suspended operator's license. After receiving this information, the trooper immediately activated his pursuit lights and stopped the van. Before making the stop, the trooper observed neither the driver of the van nor any traffic violations. The trooper eventually cited the driver, who proved to be the owner of the van, for OMVI and driving under suspension. The trial court denied the defendant's motion to suppress, which argued that the trooper lacked reasonable suspicion to justify the traffic stop. We affirmed the trial court's decision and rejected the defendant's argument that the dispatcher's broadcast to the trooper was insufficient to raise reasonable suspicion. Following the reasoning established inStroop, we held that "on the basis of the information acquired from the radio dispatcher, [the trooper] could properly infer that the vehicle's registered owner was operating the vehicle."Id., citing Stroop and State v. Graves (July 14, 1993), Medina App. No. 2202, unreported. Thus, we decided that the information known to the trooper "provided sufficient facts warranting a person of reasonable caution to believe that the appellant was unlicensed and was committing a crime." Id.
When viewed together, it becomes evident that the Second District's decision in Erickson is irreconcilable with our holdings in Stroop and Cunningham. All of these cases agree that a vehicle owner's license status is a specific articulable fact that an officer may rely upon in suspecting that a driver is illegally operating a vehicle. However, while Erickson requires some additional basis to conclude that the driver is also the owner, Stroop and Cunningham do not. Our cases stand for the proposition that the license suspension information and the rational inference that the driver is usually the owner of the car justify a traffic stop based upon reasonable suspicion. In this case, we choose to follow the course we established inStroop and Cunningham and find Sgt. Moore's traffic stop supported by reasonable suspicion of criminal activity, i.e. a driver operating a vehicle without a license. The investigatory stop exception to the warrant requirement allows an officer to draw reasonable inferences from the facts to justify a reasonable suspicion. See Terry, supra, 392 U.S. at 21; Andrews, supra,57 Ohio St.3d at 87. Sgt. Moore in this case had reliable information that the owner of the car Mr. Yeager was driving had an invalid operator's license. It is rationally inferred that the driver of a car is usually its owner. We find nothing unreasonable in an officer's decision to stop a vehicle whose owner does not have a valid driver's license when the officer can reasonably infer that the owner is the driver.
Our holding should not be construed to mean that information concerning the invalidity of a vehicle owner's license will always justify an investigatory traffic stop. Because courts must utilize a totality of the circumstances standard to determine whether an investigatory stop is constitutionally valid, other information known to the officer could become relevant. For example, if other information discerned by the officer shows that the driver is not the registered owner, the officer may lack reasonable suspicion to stop the vehicle.Greenville v. Fortkamp (May 13, 1998), Darke App. No. 97-CA-1449, unreported. In that situation, the inference that the owner is usually the driver is no longer rational and cannot be drawn from the fact of an unlicensed owner.
In reversing the trial court and upholding Sgt. Moore's investigatory stop, we are mindful that at least one other case has invoked the Erickson rationale. See Mansfield v. Crose (Apr. 21, 1994), Richland App. No. 93-CA-79-2, unreported (computer check showing that owner did not have valid motorcycle license did not justify investigatory stop absent any reasonable and articulable suspicion that driver was, in fact, the owner). In addition, other cases upholding the validity of certain traffic stops have emphasized the fact that an officer had other facts at his disposal, such as a physical description of the driver matching that of the owner. The emphasis on these additional factors could be construed to follow the Erickson rationale that other indicia besides the information concerning the vehicle owner are required to justify a traffic stop based upon reasonable suspicion. See, e.g., State v. Epling (1995),105 Ohio App.3d 663, 665; State v. Owens, supra,75 Ohio App.3d at 525; State v. Rollins (Aug. 13, 1999), Hamilton App. Nos. C-980815, C-980816, C-980817, unreported; State v. Marker (Sept. 30, 1998), Wood App. No. WD-98-003, unreported; Bay Village v.Pshock (June 18, 1998), Cuyahoga App. No. 72931, unreported;State v. Simmons (Mar. 29, 1996), Montgomery App. No. 14845, unreported; State v. Bailey (Dec. 29, 1995), Ashtabula App. No. 95-A-0023, unreported. Nevertheless, we choose to adhere to our prior cases and uphold Sgt. Moore's stop in the present case. None of the cases cited above repudiates the view that an officer may rationally infer that an owner is likely to be operating a motor vehicle observed on the roadways. While the presence of other factors corroborating the driver's identity as the unlicensed owner may enhance an officer's reasonable suspicion, the majority of cases have not expressly held such factors to be necessary. We also note that decisions from the Second, Fifth, Sixth, and Ninth Districts have held investigatory stops reasonable when based on information that a vehicle owner is unlicensed, even when the officer did not match the physical description of the owner to that of the driver. See, e.g.,Tallmadge v. McCoy, supra, 96 Ohio App.3d at 608; Greenville v.Fortkamp, supra; State v. Pennington (July 17, 1998), Wood App. No. WD-97-122, unreported; State v. McLain (Dec. 8, 1997), Stark App. No. 1997CA00125, unreported; State v. Van Driest (Mar. 20, 1996), Wayne App. No. 95CA0068, unreported. Further, we note that Erickson's continued viability is questionable in the Second District. Later Second District cases have declined to follow the Erickson rationale. The Second District has since held that an officer who learns that the registered owner of a vehicle lacks driving privileges may infer that the owner is the driver and has reasonable suspicion to make an investigatory stop, even absent some corroboration that the driver is the owner. SeeGreenville v. Fortkamp, supra; State v. Andrews (Nov. 29, 1996), Montgomery App. No. 15673, unreported; see, also, Kettering v.West (June 23, 1995), Montgomery App. No. 14843, unreported (pre-Erickson case upholding investigatory stop without description of driver).[4]
The trial court erred in sustaining Mr. Yeager's motion to suppress in reliance on Erickson. We hold that Sgt. Moore had reasonable suspicion to stop Mr. Yeager's vehicle to investigate whether he was driving without a valid license. Thus, the traffic stop did not violate Mr. Yeager's rights under the Fourth
and Fourteenth Amendments to the United States Constitution. We reverse the judgment of the Chillicothe Municipal Court and remand this case for proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED.
[1] The record also contains references to a person named Evelyn Bostwick. However, the trial court's findings of fact, the transcript from the hearing on Mr. Yeager's motion to suppress, and the state's appellate brief all refer specifically to an Evelyn Bosstic as the registered owner of the vehicle Mr. Yeager was driving.
[2] Mr. Yeager's motion to suppress contained several branches. In addition to arguing that Sgt. Moore did not possess reasonable suspicion to stop him, Mr. Yeager also alleged that Sgt. Moore did not have probable cause make an OMVI arrest. Mr. Yeager also sought to suppress any statements he made on the ground that he was interrogated without being given Miranda warnings. See, generally, Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. At the hearing on the motion to suppress, however, Mr. Yeager withdrew all branches of his motion except the issue pertaining to whether Sgt. Moore possessed reasonable suspicion to make the initial traffic stop.
[3] The Ohio Supreme Court reversed this case on grounds other than those relevant here in Dayton v. Erickson (1996), 76 Ohio St.3d 3.
[4] Interestingly, the Fifth District has also gone both ways on this issue. Compare Mansfield v. Crose, supra (additional facts corroborating driver as the owner necessary) with State v. McLain, supra, State v. Lane
(June 21, 1994), Coshocton App. No. 93-CA-23, unreported, and State v.Powell (Feb. 24, 1993), Ashland App. No. CA-1021, unreported (reasonable suspicion existed even before or without officer obtaining description of driver).
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion.
Evans, J.: Dissents
For the Court
 BY: _______________________________ William H. Harsha, Judge