While concurring in judgment in the instant case, this author has reservations concerning the direction Ohio courts have taken in the application of the reasonable suspicion standard as it relates to Terry
stops. The Supreme Court of the United States has, when weighing the sufficiency of an officer's claim of reasonable suspicion, examined the officer's conclusions by means of an objective standard. Katz, Ohio Arrest, Search and Seizure (2000), 290, Section 14.14. The Supreme Court of Ohio, however, appears to have diluted this standard by assessing the totality of the circumstances "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." Id. at 290-291, quoting State v. Bobo (1988),37 Ohio St.3d 177. Professor Katz notes that "[t]his is not an insignificant shift. Rather than evaluating police conduct by objective Fourth Amendment standards, it conforms Fourth Amendment standards to police instinct and intuition." Katz, supra, Section 14.14.
In the case sub judice, the majority cited the following facts as support for Officer Koski's contention that he had a reasonable suspicion that appellant was violating or about to violate the law: (1) the area was a high crime area; (2) it was 12:30 a.m.; (3) appellant, an African American, was standing alongside a parked car, conversing with its white occupants; (4) when Officer Koski approached, appellant walked away from the car; (5) the driver of the car immediately left the area; and (6) appellant was extremely nervous when approached by Officer Koski. I would note that courts have held each of these factors in and of itself to be insufficient to justify an investigative stop.
The United States Supreme Court held that police did not have reasonable suspicion to stop two suspects who were walking away from each other in an alley located in a high crime area. Brown v. Texas (1979),443 U.S. 47, 52. In Ohio, the Eighth District Court of Appeals has held that police did not have reasonable suspicion to stop a suspect, simply because he was white and was present in a black neighborhood that had a reputation for criminal activity. State v. Nealen (1992),84 Ohio App.3d 235, 239.
The fact that an individual was leaning against a car while engaged in a conversation with the two occupants of the car was not in and of itself adequate to amount to a reasonably sufficient suspicion that would justify a stop and search of the defendant. State v. Crosby (1991),72 Ohio App.3d 148, 151. Nor did police officers have reasonable suspicion to detain a suspect when the suspect's vehicle was parked in a high crime area and three or four people, who had been standing alongside the car, dispersed when police approached. State v. Jones (1990),70 Ohio App.3d 554, 559. Similarly, police did not have reasonable suspicion to conduct an investigative stop when the suspect, who had been sitting on his porch, walked to a car, and held a brief conversation with the occupant of a car. State v. Berry (1995), 104 Ohio App.3d 301, 302.
The mere fact that the suspects, who were standing around a car, turned away from the police officer when he approached, and one of them leaned down like he was reaching inside the car, did not connote any criminal conduct on their part. State v. Gonsior (1996), 117 Ohio App.3d 481,487. The court, in Gonsior, also noted that it would not be unusual for a suspect to show some degree of anxiety when approached by police officers. Id.
Without citing to case law, this court will assume that absent a violation of a curfew, it is not yet the case, in the state of Ohio, that simply being found outside of one's home after midnight is sufficient to justify a reasonable suspicion of criminal activity on the part of police officers.
Clearly, the individual components of appellant's behavior, which induced Officer Koski's suspicion of criminal behavior, did not justify a stop and frisk search. However, in State v. Freeman (1980), 64 St.2d 291, paragraph one of the syllabus, the Supreme Court of Ohio held that "the propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances." In Freeman, those circumstances included the following: (1) the suspect was in a high crime area; (2) he was sitting alone in his car at the rear of the building for twenty minutes; (3) it was 3:00 a.m.; and (4) the police officer was aware of recent criminal activity in the area. Id. at 295.
The court reiterated its totality of the circumstances approach inBobo, 37 Ohio St.3d at 179, holding that following facts were sufficient to justify an investigative stop: (1) there was heavy drug activity in the area; (2) it was nighttime; (3) the officer involved had twenty years of experience; (4) the officer had knowledge of how drug transactions were handled; (5) the suspect bent down as if to hide something under the seat of his car; (6) the officer's experience that the movement made by the suspect indicated that he was hiding a gun; (7) the officers being out of their vehicle and exposed to gunfire if the suspect had in fact been armed. I would note that the only action taken by the suspect, which the court relied upon in finding justification for an investigative stop, was bending over while seated in his car.
In my view, the fact pattern in the instant case is extremely close as to whether it was sufficient predicate for an investigative stop and frisk. However, in light of the holdings in Freeman and Bobo, I concur with the majority of this court in holding that upon consideration of the totality of the circumstances, there was a basis for the officers to have reasonable suspicion of illegal activity.
This writer clearly understands the strong feelings evoked by fellow officers when one of their number has been killed in the line of duty in the same housing complex within a short temporal period, which can be viewed as a definite component in the totality composite here.
Nevertheless, I would caution that the holding in this case should not be read as a clarion pronouncement that it is open season on individuals of mixed races engaged in late night conversations in low-income, high crime neighborhoods without an additional articulable probative fact or facts.
 ____________________ FORD, P.J.