OPINION
Defendant-appellant, William Tolbert, appeals his conviction in the Madison County Court of Common Pleas for drug abuse. We affirm the trial court's decision.
On July 28, 2000, appellant was indicted on one count of drug abuse in violation of R.C. 2925.11(A). The drugs were discovered after a vehicle appellant was a passenger in was stopped by City of London police officers. Appellant filed a motion to suppress evidence on the basis that the stop of the vehicle violated his Fourth Amendment rights. The trial court overruled the motion and, after a trial, a jury found appellant guilty. Appellant now appeals and raises the following two assignments of error:
Assignment of Error No. 1:
 THE FACTS AS PRESENTED DO NOT SUPPORT A SUFFICIENT, ARTICULABLE SUSPICION UNDER TERRY V. OHIO TO WARRANT AN INVESTIGATORY STOP.
Assignment of Error No. 2:
 THE TRIAL JUDGE ERRED IN ITS RELIANCE ON WHREN V. UNITED STATES WHEN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. Statev. Retherford (1994), 93 Ohio App.3d 586, 592. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688, 691.
The trial court's decision states the following facts were elicited at the hearing on appellant's motion to suppress:[1]
 Sgt. Litchfield responded to complaints from merchants that people were loitering and buying and selling drugs in the South Main Street area. Loitering apparently included drug trafficking and abuse. Sgt. Litchfield and Special Agent Dozer conducted surveillance of Jim's Bar. Over times relevant, they observed drugs being bought, sold and used near the bar.
 Litchfield had turned an informer whom he apprehended in a burglary. The informer told Litchfield that he traded stolen property for crack cocaine with a new dealer in town and at the bar. He gave Litchfield a description.
 On July 28th at 8:05 p.m., Litchfield and Dozer observed [a co-defendant] Harris stand in front of the bar and look up and down the street. Litchfield recognized Harris as a regular drug user who had been around where drugs were sold for several years.
 [Co-defendant] Lane came out of the bar and talked to Harris who was looking up and down Main Street. Litchfield personally knew that Lane was a drug user. Lane had been involved in a "sting operation" several years before. Tolbert then came out of the bar and joined Lane and Harris. Litchfield immediately recognized Tolbert from the description provided by the informer. The three began to move toward Lane's automobile.
 Sgt. Litchfield testified that he believed a drug sale was about to occur. He decided to approach the three before they got into the car, obtain an identification on Tolbert and conduct a "field interview."
* * *
 Sgt. Litchfield and Special Agent Dozer were parked in an unmarked cruiser south of the railroad tracks and in a parking lot. As he pulled from the parking lot, a train blocked the tracks to the north. Litchfield was able to maintain visual contact. He radioed for a marked cruiser to intercept Lane's automobile.
 Officer James Hutchinson received the radio request and he pulled behind the vehicle. The first thing that he noticed was that there was no county name on the rear plate. He activated his warning lights. He believed that absent county name represented probable cause to stop the vehicle. But he intended to stop it on Litchfield's command to make a Terry stop.
 Lane pulled over and Hutchinson exited the cruiser. He approached from the driver's side, and he saw the front seat passenger moving around in a suspicious manner. The passenger was Tolbert. Hutchinson thought Tolbert might be reaching for a gun under the front seat.
 Hutchinson yelled that he wanted to see everybody's hands. Harris, in the back seat, and Lane complied. Tolbert did not. Hutchinson said that Tolbert turned his head and looked like he was looking for an escape route. He then got out of the car and laid face down on the sidewalk.
 Sgt. Litchfield arrived to see Tolbert on the sidewalk. He approached the passenger side door and saw two rocks of cocaine on the front seat. The car door was open, and the white rocks were clearly visible on the blue seat. * * * [O]n the floor in the back and on the right side where Harris had been seated, Litchfield found six more rocks of cocaine.
The trial court found that within the totality of facts and circumstances, Sgt. Litchfield had a reasonable articulable suspicion that drugs were about to be exchanged and decided to conduct an interview. However, before he could do so, a train passed through the intersection and he was unable to stop the suspects before they got into their car. The trial court further found that Officer Hutchinson interpreted the facts to constitute a Terry stop and that the officer intended to stop the vehicle on that basis. The trial court found that Officer Hutchinson's first observation of the vehicle revealed that the county sticker was missing and that violation provided probable cause for Hutchinson to stop the vehicle.
Because it is dispositive of the case, we begin our analysis with appellant's second assignment of error. Appellant contends that the trial court erred in its reliance on Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, and applied the wrong legal analysis to the facts of this case. Under this assignment of error, appellant raises three questions for our review: (1) Is the failure to display a county registration sticker as proscribed by R.C. 4503.19 sufficient justification for an officer to make an investigatory stop of a vehicle? (2) Does Whren stand for the proposition that the failure to display the county registration sticker allows an arresting officer to make an investigatory stop of that vehicle, when the misdemeanor violation was only noticed after the officer was in pursuit of, and intent on stopping the vehicle in question? (3) Does Whren do away with the standard articulated underTerry v. Ohio (1968), 392 U.S. 1, 88, 88 S.Ct. 1868, which requires that an officer have a reasonable articulable suspicion of criminal activity? Appellant's questions evidence confusion of the applicable case law to automobile stops.
As this court has previously stated, there are two standards applied to determine whether police have legitimately stopped a vehicle. State v.Brock (Dec. 17, 2001), Warren App. No. CA2001-03-020, unreported; Statev. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported, at 3-5. First, police may make an investigative stop of a vehicle when they have a reasonable articulable suspicion that criminal activity has occurred. Id. See, also, Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, Dayton v. Erickson (1996), 76 Ohio St.3d 3.
Second, police may stop a vehicle based on probable cause that a traffic violation has occurred. Moeller at 4. This type of traffic stop is valid "regardless of the officer's underlying subjective intent or motivation for stopping the vehicle." Erickson at 11-12; see, also,Whren.
Appellant's questions above confuse and commingle the concepts of reasonable suspicion and probable cause. Reasonable articulable suspicion is a less demanding standard than probable cause. UnitedStates v. Sokolow (1989), 490 U.S. 1, 7, 109 S.Ct. 1581. The level of suspicion required for a Terry stop is less than that required to establish probable cause. State v. Berry (1995), 104 Ohio App.3d 301,304; United States v. Montoya de Hernandez (1985), 473 U.S. 531,105 S.Ct. 3304.
The trial court found that Officer Hutchinson intended to make an investigatory stop of appellant's vehicle, but before effecting the stop, he noticed that the county sticker was missing and stopped the vehicle on that basis. The trial court concluded that Officer Hutchinson's subjective intent to stop the vehicle was superceded by objective probable cause. The trial court found that because probable cause for the stop existed, appellant's Fourth Amendment rights were not violated. We agree.
Appellant argues that there is no case law supporting the notion that police may stop a person only on the basis of failure to display the county registration sticker. R.C. 4503.21 governs the display of license plates and validation stickers and provides in part:
 No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker issued under sections 4503.19 and 4503.191 of the Revised Code.
Violation of this section is a minor misdemeanor. R.C. 4503.99(B). This court has repeatedly found probable cause to stop a vehicle exists even where the violation is de minimus. See, e.g., State v. Moeller, Butler App. No. CA99-07-128, unreported, and cases cited therein. Thus, Officer Hutchinson had probable cause to stop the vehicle appellant was in because of the missing county identification sticker.
Because the failure to display a county registration sticker met the higher standard of probable cause to stop the vehicle, a determination of whether reasonable articulable suspicion for a Terry stop existed was unnecessary. The trial court correctly applied the Whren standard to the facts of this case.
Thus, in answer to appellant's questions above, failure to display the county sticker created the higher standard of probable cause to stop the vehicle for that violation. A stop pursuant to Whren is a probable cause stop, not an investigatory stop pursuant to Terry. Under Whren, an officer has probable cause to stop the vehicle, even for a minor offense, regardless of any subjective intent for the stop. It is irrelevant whether the violation providing probable cause occurs before or after an officer has the desire to stop a vehicle. Appellant's second assignment of error is overruled.
Given our determination that the trial court correctly applied the probable cause standard of Whren to the facts of this case, we find it unnecessary to address the issue of whether reasonable articulable suspicion existed as raised in appellant's first assignment of error. Accordingly, we find appellant's first assignment of error moot.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Although the relevant facts are apparently not in dispute, the record does not contain a transcript of the motion to suppress hearing. It is appellant's duty to request a transcript of the parts of the proceedings necessary for determination. App.R. 9(B). Although a transcript apparently exists because appellant references it in his brief, court records indicate that on appeal, appellant requested only a transcript of the "jury trial." Thus, our review will presume regularity in the proceedings below. Hartt v. Munobe (1993), 67 Ohio St.3d 3,7.